**FILED**
**United States Court of Appeals**
**Tenth Circuit**

## UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

**April 20, 2026**

**Christopher M. Wolpert**
**Clerk of Court**

_____

JARROD LOWREY,

     Plaintiff - Appellant,

v.

NANCY COLLELA, in her official capacity; CHERYL H. JOHNSTON, in her official capacity; JAMES NOEL, in his official capacity; CHRISTOPHER PEREZ, in his official capacity; KARL REIFSTECK, in his official capacity; MEGAN DUFFY, in her official capacity; SHAMARRAH HENDERSON, in her official capacity; SHANNON BACON, in her official capacity; EDNA SPRAGUE, in her official capacity; SARAH COFFEY, in her official capacity; SONYA BELLAFANT, in her official capacity; AMBER CHAVEZ BAKER, in her official capacity; JENNIFER REGAN, in her private capacity,

    Defendants - Appellees.

No. 25-2063
(D.C. No. 1:24-CV-00225-KWR-LF)
(D. N.M.)

_____

## ORDER AND JUDGMENT[*]

_____

Before **BACHARACH**, **McHUGH**, and **ROSSMAN**, Circuit Judges.

_____

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. _See_ Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

_____

Jarrod Lowrey, appearing pro se, appeals the district court's judgment dismissing his federal claims and declining to exercise supplemental jurisdiction over his state-law claims.  Exercising jurisdiction under 28 U.S.C. § 1291, we dismiss the appeal in part as moot and otherwise affirm.

## I.  BACKGROUND

This case arises from child-custody and domestic-dispute proceedings in New Mexico state court involving Lowrey and Jennifer Regan, who is the mother of his minor child.  Defendants are (1) Regan; (2) six New Mexico state-court judges, a New Mexico Supreme Court justice, and a New Mexico state-court hearing officer, in their official capacities ("Judicial Defendants"); and (3) two attorneys and the executive director of New Mexico Legal Aid, Inc., in their official capacities ("NMLA Defendants").[1]  In his complaint, Lowrey alleged that during state-court proceedings, defendants engaged in a coordinated effort to violate his rights under the United States Constitution, the New Mexico Constitution, and New Mexico state law.  He also alleged the NMLA Defendants violated the Legal Services Corporation Act ("LSCA"), 42 U.S.C. § 2996–2996*l*.  He sought (1) a temporary restraining order ("TRO") to stop a state-court TRO hearing before defendant Judge Chavez-Baker, (2) a preliminary injunction reversing defendant Judge Noel's order recusing all the

_____

[1] Defendants Johnston, Noel, Perez, Reifsteck, Duffy, Henderson, and Chavez-Baker are the state-court judges.  Defendant Bacon is the New Mexico Supreme Court justice.  Defendant Collella is the hearing officer.  And defendants Sprague, Coffey, and Bellafant are the NMLA Defendants.

judges in New Mexico's Thirteenth Judicial District from hearing any of Lowrey's current or future cases, (3) a declaration that all New Mexico judicial officers are bound by the United States Constitution and United States Supreme Court law, (4) a declaration reversing the dismissal of four of his state cases, and (5) an order removing his custody case to the federal district court in New Mexico.

The district court denied the motion for a TRO embedded in Lowrey's complaint and denied Lowrey's motion to reconsider that ruling. The district court also denied an emergency TRO motion Lowrey later filed in an attempt to stop a TRO hearing scheduled in state court.

Meanwhile, all defendants filed motions to dismiss.

The district court denied Regan's motion to dismiss as unsupported.

The district court granted the NMLA Defendants' motion to dismiss the 42 U.S.C. § 1983 claims because Lowrey failed to show they were acting under color of state law.

The district court granted the Judicial Defendants' motion to dismiss the § 1983 claims for injunctive relief on a ground they did not raise: § 1983 "expressly disallows injunctive relief against a judicial officer for an act or omission taken in such officer's judicial capacity unless a declaratory decree was violated or declaratory relief was unavailable," and Lowrey had not shown either condition was satisfied. R. at 398. The district court also dismissed Lowrey's declaratory-judgment claim regarding the supremacy of the United States Constitution and Supreme Court rulings because the requested declaration was not

3

only vague but involved an already well-established principle, and therefore addressing the claim would not settle or clarify the legal relations in Lowrey's state-court proceedings.

Lowrey filed Fed. R. Civ. P. 59(e) motions regarding the orders dismissing the § 1983 claims against the NMLA Defendants and the Judicial Defendants. The district court denied those motions and later declined to exercise supplemental jurisdiction over Lowrey's state-law claims.[2]

Lowrey appeals.

## II. MOOTNESS

Lowrey raises seven issues on appeal. The first two, however, and parts of the fifth and seventh, challenge the district court's denial of his TRO motions. Whether the district court erred in denying either of those motions is moot given that the court later dismissed Lowrey's claims. *See Green Room LLC v. Wyoming*, 157 F.4th 1196, 1215 (10th Cir. 2025) (dismissing appeal of denial of TRO motion for lack of jurisdiction because it was "mooted by the [district] court's subsequent dismissal of [the] complaint"). We therefore dismiss this appeal as moot to the extent it concerns the denial of Lowrey's TRO motions.

---

[2] After dismissing the federal claims against the other defendants, the district court concluded that, absent any state-actor defendants, it lacked subject-matter jurisdiction over any federal claims against Regan, so it dismissed those claims. The court then declined to exercise supplemental jurisdiction over the state-law claims against Regan and the other defendants. On appeal, Lowrey does not challenge the dismissal of his claims against Regan or the district court's refusal to exercise supplemental jurisdiction over his state-law claims.

## III. STANDARD OF REVIEW

We review de novo the district court's dismissal under Fed. R. Civ. P. 12(b)(6).[3] *Albers v. Bd. of Cnty. Comm'rs*, 771 F.3d 697, 700 (10th Cir. 2014). "To survive a motion to dismiss, a plaintiff must plead facts sufficient to state a claim to relief that is plausible on its face." *Id.* (internal quotation marks omitted). "[W]e must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff." *Id.* (internal quotation marks omitted).[4] But "the tenet that a court must accept" well-pleaded factual allegations as true "is inapplicable to legal conclusions," so we are not bound by a plaintiff's recital of legal principles supported by conclusory statements. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). We afford Lowrey's pro se filings a liberal construction, but we cannot act as his advocate. *See Yang v. Archuleta*, 525 F.3d 925, 927 n.1 (10th Cir. 2008).

## IV. DISCUSSION

A.    **Dismissal of claims against NMLA Defendants**

To state a claim under § 1983, a plaintiff must prove two elements: "(1) deprivation of a federally protected right by (2) an actor acting under color of

---

[3] In its orders denying Lowrey's Rule 59(e) motions, the district court made clear that it had dismissed the federal claims against the Judicial Defendants and the NMLA Defendants pursuant to Rule 12(b)(6).

[4] Given this standard, we reject Lowrey's attempt to fault the NMLA Defendants' motion to dismiss for failing to challenge the complaint's factual allegations.

state law." *Schaffer v. Salt Lake City Corp.*, 814 F.3d 1151, 1155 (10th Cir. 2016). The under-color-of-law requirement is "a jurisdictional requisite for a § 1983 action." *Polk Cnty. v. Dodson*, 454 U.S. 312, 315 (1981).

Lowrey advances several theories why the NMLA Defendants are state actors within the meaning of § 1983. None have merit.

Lowrey first argues the NMLA Defendants acted under color of state law by representing clients in state-funded programs and enforcing New Mexico's Family Violence Protection Act ("FVPA"). In support he points to *Polk County* for the principle that a person may act under color of state law "when exercising power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law,'" 454 U.S. at 317–18 (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)). Lowrey claims his allegations meet this standard because the NMLA Defendants "enforce[ed] the [FVPA]" in "a quasi-prosecutorial role," "exercising authority conferred by the state to enforce protection orders and prosecute claims." Aplt. Opening Br. at 12. He argues we should not treat the NMLA Defendants like the defendant in *Polk*, who was a public defender, because their "actions were not adversarial to the state" but instead "clothed with the authority of the state." *Id.* (emphasis and internal quotation marks omitted).

The district court rejected this line of argument, and so do we. In *Polk*, the Supreme Court said that an appointed public defender performed "an essentially private function," 313 U.S. at 319, because "[o]nce a lawyer has undertaken the

representation of an accused, the duties and obligations are the same" as those of "any other lawyer," regardless of "whether the lawyer is privately retained, appointed, or serving in a legal aid or defender program."  313 U.S. at 318 (internal quotation marks omitted).  The NMLA Defendants' alleged actions are even further afield of state action than were the public defender's actions in *Polk*.  NMLA is a private, nonprofit New Mexico corporation.  *See* R. at 194.  Unlike the public defender in *Polk*, who was employed by the state, *see Polk*, 454 U.S. at 319, NMLA receives its funding through the Legal Services Corporation ("LSC"), which is "a private nonmembership nonprofit corporation" Congress "established in the District of Columbia" to "provid[e] financial support for legal assistance to noncriminal proceedings or matters to persons financially unable to afford legal assistance," 42 U.S.C. § 2996b(a).  Thus, we agree with the NMLA Defendants that when representing Regan, they were not exercising authority conferred by the state but were acting as "private attorneys, representing a private client, in a civil matter," and therefore "cannot reasonably be deemed to be 'functional' state actors in that capacity.'"  NMLA Def.'s Response Br. at 7–8.[5]

---

[5] Even if NMLA received state funding, that would not be enough to transform the NMLA Defendants' alleged conduct into state action.  *See Gallagher v. Neil Young Freedom Concert*, 49 F.3d 1442, 1448 (10th Cir. 1995) ("[T]he fact that a private entity contracts with the government or receives governmental funds or other kinds of governmental assistance does not automatically transform the conduct of that entity into state action."); *Schnabel v. Abramson*, 232 F.3d 83, 87 (2d Cir. 2000) (holding that due to "the lack of governmental control over or interference with legal aid societies' affairs," and "notwithstanding the receipt of substantial government funds by the societies, . . . a legal aid society ordinarily is not a state actor amenable to suit under § 1983" (internal quotation marks omitted)).

Lowrey next argues the NMLA Defendants were state actors because they acted in conspiracy with Judge Chavez-Baker and Justice Bacon. Conspiracy with a state actor can render a private party a state actor under § 1983: "[I]f a private party is a willful participant in joint activity with the State or its agents, then state action is present." *Gallagher v. Neil Young Freedom Concert*, 49 F.3d 1442, 1447 (10th Cir. 1995) (internal quotation marks omitted). But "[t]o state a § 1983 conspiracy claim," a plaintiff must "allege specific facts showing . . . an agreement upon a common, unconstitutional goal, and concerted action taken to advance that goal." *Bledsoe v. Carreno*, 53 F.4th 589, 609 (10th Cir. 2022) (citations and internal quotation marks omitted).

We agree with the district court that although Lowrey's allegations may be consistent with a conspiracy, he did not specifically allege facts showing an agreement to achieve an unconstitutional goal or concerted action to accomplish such a goal. The allegations involve Regan's alleged misrepresentation that, in order to secure NMLA's representation, she was the victim of domestic violence; ordinary acts of advocacy by the NMLA Defendants, some of which allegedly violated the FVPA and the LSCA; judicial rulings both favorable and unfavorable to Lowrey; and a conclusory allegation that the NMLA Defendants conspired with Judge Chavez-Baker and Justice Bacon to "frame Lowrey for a misdemeanor charge," R. at 42, ¶ 418. These allegations are insufficient to plausibly allege a conspiracy with any of the Judicial Defendants that would bring the NMLA Defendants within § 1983's jurisdictional ambit. *See Barnard v. Young*, 720 F.2d 1188, 1189 (10th Cir.

8

1983) (explaining that private attorneys do not become state actors by representing clients in court, even if their actions are in excess of what is authorized by law); *see also Dennis v. Sparks*, 449 U.S. 24, 28 (1980) ("[M]erely resorting to the courts and being on the winning side of a lawsuit does not make a party a co-conspirator or a joint actor with the judge."); *Iqbal*, 556 U.S. at 678 (when considering sufficiency of a complaint under Rule 12(b)(6), courts are not required to accept legal conclusions as true).

For similar reasons, we reject Lowrey's contention that by working with "judges to enforce protection orders and delay hearings," Aplt. Opening Br. at 13, the NMLA Defendants are state actors under the nexus test. Under that test, "a plaintiff must demonstrate that there is a sufficiently close nexus between the government and the challenged conduct such that the conduct may be fairly treated as that of the State itself." *Gallagher*, 49 F.3d at 1448 (internal quotation marks omitted). But "[m]erely availing oneself of state judicial procedures is insufficient to constitute state action [under the nexus test]." *Johnson v. Rodrigues*, 293 F.3d 1196, 1203 (10th Cir. 2002). Lowrey's allegations regarding protection orders and hearing delays show nothing more than the NMLA Defendants availing themselves of state judicial procedures.

Lowrey also argues the NMLA Defendants are state actors under the nexus test because the New Mexico Governor's Office provides "oversight and guidance" to the NMLA. Aplt. Opening Br. at 14. This apparently is a reference to a provision of the LSCA requiring either a state governor or the LSC's Board of Directors to appoint a

9

state advisory council. *See* 42 U.S.C. § 2996c(f). However, the statute describes the state advisory council's role as "notifying the [LSC] of any apparent violation of the provisions of [the LSCA] and applicable rules, regulations, and guidelines promulgated pursuant to [the LSCA]." *Id.* This limited role is insufficient to show state action by the NMLA Defendants, because under the nexus test, "a state normally can be held responsible for a private decision only when it has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State." *Gallagher*, 49 F.3d at 1448 (internal quotation marks omitted). This test ensures "that the state will be held liable for constitutional violations only if it is responsible for the specific conduct of which the plaintiff complains." *Id.* Neither Lowrey's allegations nor his argument show that the New Mexico Governor or the state advisory council exercises the requisite level of power or encouragement over the NMLA Defendants' specific litigation conduct alleged in this case.

Finally, Lowrey contends that political advocacy by two of the NMLA Defendants (Sprague and Coffey) demonstrates that the NMLA Defendants acted under color of state law. We are not persuaded. For a § 1983 claim, "there must be a sufficient nexus between the [constitutional deprivation] and the alleged state action in order to render the activity a constitutional violation." *Junior Chamber of Com. of Rochester, Inc., v. U.S. Jaycees*, 495 F.2d 883, 888 (10th Cir. 1974); *cf. Schaffer*, 814 F.3d at 1156 ("[B]efore conduct may be fairly attributed to the state because it constitutes action under color of state law, there must be a real nexus between the

10

[state] employee's use or misuse of their authority as a public employee, and the violation allegedly committed by the defendant." (internal quotation marks omitted)). Even if Sprague and Coffey's alleged political advocacy could be viewed as state action, none of Lowrey's allegations tie that advocacy to the alleged deprivations of his constitutional rights. Consequently, this theory fails.

## B. Dismissal of claims against Judicial Defendants

The district court dismissed the claims for injunctive relief against the Judicial Defendants because "in any [§ 1983] action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable." § 1983. Lowrey contends the district court overlooked *Ex parte Young*, 209 U.S. 123 (1908), under which "a plaintiff may bring suit against individual state officers acting in their official capacities if the complaint alleges an ongoing violation of federal law and the plaintiff seeks prospective relief," *Muscogee (Creek) Nation v. Pruitt*, 669 F.3d 1159, 1166 (10th Cir. 2012). We disagree.

"[Section] 1983 and *Ex Parte Young* are distinct sources of liability and immunity." *Gays Against Groomers v. Garcia*, 169 F.4th 981, 994 (10th Cir. Mar. 10, 2026). Consistent with the *Ex parte Young* doctrine, Lowrey sought only prospective injunctive relief against the Judicial Defendants for alleged ongoing violations of federal law. But "*Ex Parte Young* is an exception to Eleventh Amendment sovereign immunity," and "the fact that the Eleventh Amendment may not protect [litigants] from injunctive relief tells us nothing about whether they are

11

liable under § 1983." *Id.* Thus, to obtain prospective relief against the Judicial Defendants, Lowrey had to show either that a declaratory decree was violated or declaratory relief was unavailable.

Lowrey insists he met this burden. He claims we can find the declaratory decree the Judicial Defendants violated in the United States Constitution and decisions of the United States Supreme Court. But a "declaratory decree" is synonymous with a "declaratory judgment," which is defined as "[a] binding adjudication that establishes the rights and other legal relations of the parties without providing for or ordering enforcement." *Judgment*, BLACK'S LAW DICTIONARY (12th ed. 2024). It is specific to parties in a case. *See id.* (defining "judgment" as "[a] court or other tribunal's final determination of the rights and obligations of the parties in a case."). Lowrey has not identified any "binding adjudication" that the Judicial Defendants' alleged conduct violated. Reliance on allegations that the Judicial Defendants violated principles of the United States Constitution or decisions of the United States Supreme Court is insufficient to show that their alleged conduct violated a declaratory decree.

Turning to § 1983's second route to obtaining prospective injunctive relief against a judicial officer, Lowrey argues that declaratory relief was unavailable in the New Mexico state courts because of the Judicial Defendants' "denial of access to state courts and the systemic nature of [their] actions to prevent [him] from bringing his cases to the state district court." Aplt. Opening Br. at 16. But nothing in Lowrey's complaint plausibly alleges that the Judicial Defendants prevented Lowrey

12

from seeking declaratory relief in New Mexico state court. At most, the state courts ruled against Lowrey, required his cases to be heard in a different judicial district, and, in the case of the New Mexico Supreme Court, denied review. That does not mean declaratory relief was unavailable. *See William Penn Apartments v. D.C. Ct. of Appeals*, 39 F. Supp. 3d 11, 19 (D.D.C. 2014) (denial of review by a state's highest court "does not make declaratory relief unavailable" because a litigant can "petition[] for a writ of certiorari in the Supreme Court").

## C.    Lowrey's other arguments

Lowrey advances three general arguments regarding the district court's handling of this case. None requires reversal.

First, Lowrey contends the district court's sua sponte reliance on § 1983's limitation on injunctive relief against judicial officers violated his due process rights because he was not afforded an opportunity to respond. We see no due process violation or abuse of discretion. "When an issue or claim is properly before the court, the court is not limited to the particular legal theories advanced by the parties, but rather retains the independent power to identify and apply the proper construction of governing law." *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 99 (1991).

Second, Lowrey faults the district court for relying on several arguments the NMLA and Judicial Defendants purportedly raised for the first time in their reply briefs in support of their motions to dismiss without affording him an opportunity to respond: (1) the applicability of "judicial immunity from declaratory and injunctive relief," (2) "the statutory bar in . . . § 1983," and (3) "new assertions about [the

13

NMLA Defendants'] non-state actor status." Aplt. Opening Br. at 24. Our review of the briefing on the motions to dismiss uncovered no such arguments raised for the first time in the reply briefs. Instead, each set of defendants permissibly replied to arguments Lowrey raised in his responses to their motions. But even if a defendant raises new arguments in a reply brief, courts retain discretion to overlook waiver, "particularly when presented with a strictly legal question the proper resolution of which is beyond doubt or when manifest injustice would otherwise result." *Daigle v. Shell Oil. Co.*, 972 F.2d 1527, 1539 (10th Cir. 1992) (discussing exceptions to waiver in context of issue not raised in district court). Such is the case here. Moreover, many months passed between the filing of the reply briefs and the district court's rulings on the motions to dismiss, but Lowrey did not seek leave to file a sur-reply or otherwise present his concern about new arguments in the reply briefs. In sum, we see no reversible procedural error in the district court's handling of the arguments raised in the briefing on the motions to dismiss.

Third, Lowrey claims the district court did not afford his pro se filings a sufficiently liberal treatment but was instead hostile toward him, applied double standards, and disregarded his allegations and the law. In support, he provides a series of quotations from the district court's rulings, characterizes the motions to dismiss as "conclusory" and failing to address facts and law, and claims the district court dismissed his claims without a proper analysis and never credited his allegations. Having thoroughly reviewed the record, we conclude that Lowrey's complaints are baseless. Nothing in the quotations he provides reveals anything

14

other than sound judicial observation and analysis, and the motions to dismiss were well taken and properly granted. Lowrey has not explained, nor do we see, how a more liberal treatment of his filings would have led to a different result.[6]

## V. CONCLUSION

We dismiss this appeal in part as moot and otherwise affirm the district court's judgment.

Entered for the Court

Carolyn B. McHugh
Circuit Judge

---

[6] Other than to characterize the district court's denial of his request for a declaratory judgment as part of "a pattern of judicial overreach and procedural unfairness," Aplt. Opening Br. at 21, Lowrey does not develop any argument that the district court erred in denying his request for a declaration that all New Mexico judicial officers are bound by the United States Constitution and United States Supreme Court law. He has therefore waived appellate review of that ruling. *See Sawyers v. Norton*, 962 F.3d 1270, 1286 (10th Cir. 2020) ("Issues not raised in the opening brief are deemed abandoned or waived" as are "arguments that are inadequately presented." (internal quotation marks omitted)).